

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-4-1995

# United States v Alton

Precedential or Non-Precedential:

Docket 94-3313

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Alton" (1995). *1995 Decisions.* Paper 207.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/207

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3313 and 94-3314


UNITED STATES OF AMERICA

Appellant

v.

DARNELL LEE ALTON; HOWARD SCOTT;
GINA LEWIS; ANGELA ALTON


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 92-cr-00257-1)


Argued June 27, 1995

Before: HUTCHINSON, ROTH and GARTH, <u>Circuit Judges</u>

(Opinion Filed  August 4, 1995)


Frederick W. Thieman
United States Attorney
Paul J. Brysh (Argued)
Assistant U.S. Attorney
633 U.S. Post Office and Courthouse
Pittsburgh, PA 15219
          Attorneys for Appellant and Cross-Appellee

Gary B. Zimmerman, Esq. (argued)
Suite 620
312 Boulevard of the Allies

Pittsburgh, PA 15222
        Attorney for Appellee and Cross-Appellant


OPINION OF THE COURT


ROTH, Circuit Judge:


Appellee Darnell Alton was one of four individuals charged in an indictment alleging various drug offenses. Count One charged Alton with conspiracy to possess and distribute cocaine and cocaine base ("crack cocaine"), in violation of 21 U.S.C. § 846; Count Two charged Alton with possession with intent to distribute in excess of five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1); Count Three charged Alton with possession with the intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1).

Between 1990 and 1992, Alton was a heavy crack cocaine trafficker in the Pittsburgh area. He employed a number of people who cooked cocaine powder into crack, stored it, and distributed it on the street. On July 23, 1991, following a tip from a confidential informant that Alton was in possession of a large quantity of cocaine, which he was selling from his house, police executed search warrants for Alton's person, residence, and car. Crack cocaine was found on Alton's person and cocaine powder and cash was found at Alton's residence. Three members of Alton's operation testified at trial about Alton's drug transactions.

Alton was found guilty at trial on Counts One and Two but was acquitted on Count Three. At sentencing, the district court departed downward from the United States Sentencing Guidelines ("Guidelines") range for cocaine base offenses and imposed a ten-year term of imprisonment and a five-year term of supervised release. The Government filed this appeal to challenge the district court's failure to follow the provisions of the Guidelines as they apply to offenses involving cocaine base. Because we find that the district court erred in departing downwards from the applicable guideline range, we will vacate the sentence and remand for resentencing.[0]

## II.

### A.

At issue in this case are the provisions of the Sentencing Guidelines (U.S.S.G. § 2D1.1) that impose more severe sentences on those prosecuted for distribution or possession with intent to distribute crack cocaine[0] than on those prosecuted for similar crimes involving cocaine powder.[0] The disparity in the

---

[0] On cross-appeal, Alton alleges that the Government introduced evidence seized pursuant to a defective search warrant, thereby violating his rights as guaranteed by the Fourth Amendment to the United States Constitution. We have reviewed this claim and find it to be without merit.

[0] The Guidelines define cocaine base as "crack" -- "the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1, Drug Quantity Table, footnote. We use the terms "cocaine base" and "crack cocaine" interchangeably in this opinion to distinguish this form of cocaine from cocaine powder.

[0] This sentencing scheme applies to defendants convicted of the offenses enumerated in 21 U.S.C. § 841(a), including distribution or possession with intent to distribute controlled substances, and those convicted of attempting or conspiring to

treatment of offenses involving the two substances originated in congressional action.

Pursuant to the Anti-Drug Abuse Act of 1986, Congress established basic sentencing levels for crack cocaine offenses. Congress amended 21 U.S.C. § 841 to provide for a 100:1 ratio in the quantities of cocaine powder and crack cocaine that trigger mandatory minimum penalties. Amended 21 U.S.C. § 841(b)(1)(A) establishes a mandatory ten-year term of imprisonment for offenses involving 5 kilograms of cocaine or 50 grams of cocaine base. And 21 U.S.C. § 841(b)(1)(B) provides for a mandatory five-year term of imprisonment for offenses involving 500 grams of cocaine or 5 grams of cocaine base.

Based on those statutory provisions, the Drug Quantity Table of U.S.S.G. § 2D1.1 treats any quantity of cocaine base as the equivalent of 100 times the same quantity of cocaine powder. Moreover, the Drug Equivalency Tables, U.S.S.G. § 2D1.1, pursuant to which the penalty for an offense involving one controlled substance is tied to or converted to the weight of an unrelated controlled substance for sentencing purposes, equate one gram of cocaine base to 20 kilograms of marijuana but one gram of cocaine to 200 grams of marijuana.

B.

---

commit those offenses, pursuant to 21 U.S.C. § 846. See United States v. Frazier, 981 F.2d 92, 94 n.1 (3d Cir. 1992) (explaining the sentencing scheme), cert. denied, 113 S. Ct. 1661 (1993), cert. denied sub nom. Pettus v. United States, 113 S. Ct. 1662 (1993).

Although Alton was found guilty of crack cocaine offenses, the district court departed downward from the sentence range that the Guidelines prescribe for such offenses. The court attributed 422.68 grams of crack cocaine and 235.5 grams of cocaine powder to Alton. Pursuant to the Drug Equivalency Table, U.S.S.G. § 2D1.1, the court converted the 422.68 grams of crack cocaine to 8453.6 kilograms of marijuana and the 235.5 grams of cocaine powder to 47.1 kilograms of marijuana, arriving at a total of 8500.7 kilograms of marijuana, which corresponds to a base offense level of 34. The court added 4 levels to the base offense level pursuant to U.S.S.G. § 3B1.1(a), based on Alton's role in the offense, but granted a 3 point reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

Thus, the court fixed the total offense level at 35, which provides for a sentence range of 168-210 months. The court granted a downward departure from that range based on 18 U.S.C. §3553(b) and U.S.S.G. § 5K2.0,[0] concluding that the Sentencing Commission did not adequately consider a mitigating factor -- the disparate impact that its policies would have on African-American males -- when it developed guideline ranges for crack cocaine.[0]

[0]     U.S.S.G. § 5K2.0 states:

> Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

[0]     The court adopted the reasoning of a district court case that since has been vacated in relevant part. See United

In justifying the departure, the court further relied on indications that Congress has reconsidered the rationality of the 1 to 100 ratio. Moreover, the court cited the 1993 annual report of the United States Sentencing Commission, which indicates that for the period from October 1, 1992, through September 30, 1993, "95.1 percent of the offenders incarcerated and subjected to the 1 to 100 ratio between crack and powdered cocaine [were] either black or Hispanics." Appendix at 846, 872-73.

The court additionally discussed the Drug Equivalency Tables, U.S.S.G. § 2D1.1. The court concluded that the conversion of one gram of cocaine base to 20 kilograms of marijuana, pursuant to those tables, is arbitrary and capricious. Citing Motor Vehicle Manufacturers Assoc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29 (1983) as authority, the court elected to ignore what it termed the "improper agency action" establishing the equivalency and to apply the mandatory minimum sentence established by Congress for similar offenses involving cocaine powder.

### III.

### A.

21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii) & (iii) are the statutory provisions that establish a mandatory minimum ten year penalty for offenses involving cocaine powder and crack cocaine.

---

States v. Majied, 1993 U.S. Dist. LEXIS 15156 (D. Neb. July 29, 1993), aff'd in part and vacated in part sub nom. United States v. Maxwell, 25 F.3d 1389 (8th Cir.), cert. denied, 115 S. Ct. 610 (1994).

The statute provides a 100:1 ratio between the amounts of crack cocaine and of cocaine powder which are required to activate the minimum mandatory penalty. Both parties acknowledge that the statute is constitutional on its face. However, the Government challenges the district court's conclusion that the guideline treatment of crack cocaine offenses is arbitrary and capricious. Moreover, the Government challenges the district court's downward departure from the Guidelines based on the disproportionate impact of the severe penalties for crack cocaine offenses on African-Americans.

B.

The district court held that the Sentencing Commission acted in an arbitrary and capricious manner by providing for the conversion of one gram of cocaine base to 20 kilograms of marijuana for sentencing purposes, pursuant to the Drug Equivalency Tables in U.S.S.G. § 2D1.1. The court concluded that the Sentencing Commission violated the informal rulemaking procedures of the Administrative Procedures Act, 5 U.S.C. § 553, and that the guideline provisions under which Alton was sentenced are therefore void.[0]

---

[0] The parties did not raise, this Circuit has not decided, and we accordingly do not address, the issue of whether or not the Sentencing Commission, as an entity within the judicial branch, is an agency which is subject to the provisions of the APA. See Washington Legal Found. v. U.S. Sentencing Com'n, 17 F.3d 1446, 1450 (D.C.Cir. 1994) (Commission not subject to the provisions of the APA except as specifically enumerated). However, Congress did specifically provide in 28 U.S.C. § 994(x) that promulgation of the Guidelines by the Sentencing Commission would be subject to the rulemaking provisions of § 553 of the APA. See, e.g., United States v. Mistretta, 488 U.S. 361, 394 (1989) ("In contrast to a court, [the Commission's] rule-making is subject to the notice

In *Motor Vehicle Manufacturers Assoc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. at 43, the Supreme Court held that an agency adopting a rule pursuant to informal rulemaking procedures "must examine the relevant data and articulate a satisfactory explanation for its action including a `rational connection between the facts found and the choice made.'"  The Commission provides such an explanation for the challenged Guideline provisions in U.S.S.G. § 2D1.1, comment 10, which states that the Commission "used the sentences provided in, and equivalences derived from, the statute (21 U.S.C. § 841(b)(1)) as the primary basis for the Guideline sentences."

As the district court held, 21 U.S.C. § 841(b)(1) does not equate crack cocaine to another controlled substance or authorize the use of an equivalency table pursuant to which the penalty for an offense involving one controlled substance is tied to or converted to the weight of an unrelated controlled substance. Nonetheless, the statute does establish the 100:1 ratio of cocaine powder to crack cocaine.  The same ratio is reflected in the Drug Equivalency Tables, pursuant to which 1 gram of cocaine is equivalent to 200 grams of marijuana and 1 gram of crack cocaine is equivalent to 20 kilograms of marijuana. The Commission established drug equivalences as "a means for combining differing controlled substances to obtain a single offense level."  U.S.S.G. § 2D1.1, comment 10.  Clearly the

---

and comment requirements of the [APA].") The parties to this appeal have agreed that the standard to be applied is "arbitrary and capricious."

Commission looked to the statute as a guide in formulating the equivalences. The statute in turn was based on Congress's consideration of available data on the two forms of cocaine.

We have upheld the constitutionality of both the federal drug statutes (21 U.S.C. §§ 841(b)(1) & 846) and the guideline provisions (U.S.S.G. § 2D1.1) that treat crack cocaine offenses more severely than offenses involving an equal quantity of cocaine powder. See United States v. Frazier, 981 F.2d at 92 (holding that distinctions between crack cocaine and cocaine powder for sentencing purposes do not constitute an equal protection violation and that the 100:1 ratio does not constitute cruel and unusual punishment); United States v. Jones, 979 F.2d 317 (3d Cir. 1992) (holding guideline provisions imposing higher offense levels for offenses involving crack cocaine not to be unconstitutionally vague).

In United States v. Frazier, we explicitly rejected an equal protection challenge to the relevant statutory and guideline procedures. We first observed that the statutes and guidelines do not on their face classify defendants by race. Next, we determined that the provisions do not employ a facially "non-racial characteristic that strongly correlates with race for cultural or socioeconomic reasons as a sham disguising invidious racial classification." Frazier, 981 F.2d at 95 (citing Yick Wo v. Hopkins, 118 U.S. 356 (1886)). We concluded that there was "no evidence whatsoever that suggests that the distinction drawn between cocaine base and cocaine was motivated by any racial animus or discriminatory intent on the part of either Congress or

the Sentencing Commission." Id. We held that absent such an explicit or inferable discriminatory purpose, the statutory distinction between cocaine base and cocaine is subject to rational basis review, which it withstands.⁰ Id.

In rejecting constitutional challenges to the distinction between cocaine base and cocaine powder in the federal sentencing scheme, courts have consistently found that Congress had a rational basis for treating offenses involving the two substances differently. In Jones, 979 F.2d at 320, we emphasized the chemical differences between crack cocaine and cocaine powder, concluding that "the Sentencing Guidelines have a reasonable basis to differentiate between cocaine base and cocaine salt." Moreover, other courts have emphasized the potency of crack cocaine, "the ease with which drug dealers can carry and conceal it, the highly addictive nature of the drug, and the violence which often accompanies trade in it." United

---

⁰ The Jones and Frazier decisions appear to be in accord with the decisions of other federal courts of appeals. These federal courts have uniformly upheld the statutory and guideline penalties for crack cocaine offenses against due process, equal protection, and cruel and unusual punishment claims. See, e.g., United States v. Byse, 28 F.3d 1165 (11th Cir. 1994) (equal protection challenge), cert. denied, 115 S. Ct. 767 (1995); United States v. Coleman, 24 F.3d 37 (9th Cir.) (equal protection challenge), cert. denied, 115 S. Ct. 261 (1994); United States v. Fisher, 22 F.3d 574 (5th Cir. 1994) (Eighth Amendment challenge), cert. denied sub nom. Dunkins v. United States, 115 S. Ct. 529 (1994), ; United States v. Palacio, 4 F.3d 150 (2d Cir. 1993) (due process challenge), cert. denied, 114 S. Ct. 1194 (1994); United States v. Easter, 981 F.2d 1549 (10th Cir. 1992) (due process and equal protection challenge), cert. denied, 113 S. Ct. 2448 (1993); United States v. Avant, 907 F.2d 623 (6th Cir. 1990) (vagueness and Eighth Amendment challenge).

States v. Lattimore, 974 F.2d 971, 975 (8th Cir. 1992), cert. denied, 113 S. Ct. 1819 (1993).[0]

We conclude, therefore, that no "improper" agency action was involved in the Sentencing Commission's establishment of the Equivalency Tables, at least insofar as we are involved here with the 100:1 ratio between crack cocaine and cocaine powder.

C.

We next address the Government's contention that the district court erred in concluding that 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 authorize a downward departure from the applicable guideline range on the grounds that the Sentencing Commission did not adequately consider the disparate impact that its policies would have on African-American males when it developed guideline ranges for crack cocaine offenses.

As set forth above, U.S.S.G. § 5K2.0 adopts the mandate of 18 U.S.C. § 3553(b), stating that a sentencing court may impose a sentence outside the range established by the applicable guideline upon finding the existence of "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in

_____

[0]    See also United States v. Lawrence, 951 F.2d 751 (7th Cir. 1991) (holding that the penalty scheme "evinces a rational purpose and does not violate the Due Process clause"); United States v. Buckner, 894 F.2d 975 (8th Cir. 1990) (concluding that the 100:1 ratio is rationally related to the congressional objective of protecting public welfare).

formulating the guidelines that should result in a sentence different from that described."  U.S.S.G. § 5K2.0.

In _Frazier_, we held that even assuming the appellants' claim that "a very high percentage of defendants convicted for cocaine base offenses are black, while defendants convicted for cocaine offenses are more likely to be white," such racial disparities are insufficient to establish that U.S.S.G. § 2D1.1 violates the equal protection clause.  We held that "[e]ven conscious awareness on the part of the legislature that the law will have a racially disparate impact does not invalidate an otherwise valid law," provided that such awareness does not play a causal role in the statute's passage.  _Frazier_, 981 F.2d at 95.

Although the issue here is not whether the relevant guideline provisions are invalid on the grounds of disparate impact but only whether a downward departure is warranted, the reasoning of _Frazier_ is instructive.  Moreover, every appellate court that has considered the matter has held that the impact of the guideline treatment of crack cocaine is not a proper ground for downward departures from the applicable guideline range. These courts have rejected defendants' arguments that the continued enforcement, rather than the enactment, of the challenged sentencing provisions is unconstitutional.[0]

---

[0]      _See_, _e.g._, _United States v. Maxwell_, 25 F.3d 1389 (8th Cir.), _cert. denied_, 115 S. Ct. 610 (1994); _United States v. Bynum_, 3 F.3d 769 (4th Cir. 1993), _cert. denied_, 114 S. Ct. 1105 (1994); _United States v. Lattimore_, 974 F.2d at 971; _United States v. Haynes_, 985 F.2d 65 (2d Cir. 1993).

In United States v. Bynum, 3 F.3d at 774-75, the Fourth Circuit rejected the defendant's argument that the Sentencing Commission's alleged failure to consider the disparate impact on African-Americans of the 100:1 powder-to-crack ratio constitutes a ground for a downward departure.  The court reasoned that a showing that the Commission failed to take a factor into account cannot suffice to justify a downward departure.  Indeed, the court explained, "[f]rom the countless factors that constitute the human experience, the Commission necessarily considered only a few.  Any defendant can identify something about himself that the guidelines do not address."  Id. at 774.  Therefore, the court emphasized, the factor alleged not to have been considered must also be a factor for which a sentence outside the guidelines "should result."  Id.

Observing that the proposed mitigating circumstance in Bynum rested on membership in a class rather than on a factor personal to the defendant, the court held that the guidelines' failure to address the impact of a provision on a class should result in a class-wide downward departure "only when failure to provide it would deprive the class of equal protection."  Id. at 775.  Thus, the court rejected the "extraordinary relief" that the defendant requested on the grounds that the 100:1 powder-to-crack ratio was not enacted pursuant to a discriminatory purpose and thus did not violate the constitutional principle of equal protection. Id.; see also Maxwell, 25 F.3d at 1401 (adopting the Fourth Circuit's reasoning and stating that allowing such a

class-wide departure would "impede Congress's policy decision to treat cocaine base more harshly than powder cocaine").

Alton has not established facts or circumstances peculiar to himself or his offense that justify a downward departure. He justifies departure from the guidelines solely on the overall impact of the guidelines, a factor present in all crack cocaine cases. Such a departure cannot be reconciled with the language of the guidelines.

Indeed the reasoning of Bynum and other cases in which courts have refused to affirm downward departures based on the disparate impact of the crack cocaine sentencing scheme rests squarely on the language of the guidelines. The Commentary to U.S.S.G. § 5K2.0 states that "[i]n the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." The Commission likewise addresses the subject of departures in the Introduction to Chapter One of the Guidelines, stating:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. Manual, Ch.1, Part A4(b). The Commission noted its expectation "that despite the courts' legal freedom to depart from the guidelines, they will not do so very often." Id.

IV.

We limit our decision to holding that the disparate impact of the severe penalties for crack cocaine offenses on African-Americans is not a valid ground for departure from the guideline ranges for crack cocaine offenses. Accordingly, we vacate the sentence and remand for resentencing within the applicable guideline ranges. We defer to Congress and the Sentencing Commission to address the related policy issues and to consider the wisdom of retaining the present sentencing scheme.