**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Terrell Scott BOOKER, Defendant–
Appellant.**

**No. 95–2067.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 5, 1995.

Decided Jan. 8, 1996.

---

**3.** Pursuant to Fed.R.App.P. 21(b) the district judge also was notified and given an opportunity to respond.

Stephen B. Clark (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Renee E. Schooley (argued), Office of the Federal Public Defender, East St. Louis, IL, for Defendant–Appellant.

Before EASTERBROOK, MANION, and KANNE, Circuit Judges.

PER CURIAM.

Appellant Terrell Booker was convicted of possession of cocaine base with intent to distribute (21 U.S.C. § 841(a)(1)), distribution of cocaine base (21 U.S.C. § 841(a)(1)), using or carrying a firearm during drug trafficking (18 U.S.C. § 924(c)(1)), and possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1)). Booker maintains the evidence was insufficient to convict him under 18 U.S.C. § 924(c)(1), and that he was entitled to a downward departure because the higher penalties imposed on cocaine base ("crack") have a disparate impact on African Americans. We affirm.

### FACTS

On November 6, 1994, Diane Hooper and Larry Wakeford drove in Wakeford's van to a known crack house in Alton, Illinois. Hooper, an admitted addict, entered the house to purchase drugs. Hooper met Booker in the house and purchased a "rock" of crack cocaine from him for $20. Hooper knew Booker, as she had purchased crack from him at the house on previous occasions. As Hooper began to leave, Booker asked if he could have a ride to a nearby Amoco station (another known drug distribution area). Hooper agreed, and both returned to the van. Hooper got in the front passenger seat, and Booker sat in the rear passenger seat behind driver Wakeford.

Alton Police Officers Dan Cook and Michael Davis observed the van waiting outside the house, and, given their knowledge of the prostitution and crack dealing in the area, they became suspicious. They approached the van to identify the passengers. Booker saw the police approaching and told Wakeford to drive away. Wakeford refused. As Officer Davis approached the driver's side window of the van, he saw Booker in the rear seat emptying his pockets onto the van floor. Booker then attempted to flee out the back

of the van, but he was intercepted by Officer Cook. A search of the van floor revealed a Taurus .38 caliber revolver loaded with five rounds of wadcutter ammunition and one round of standard ammunition, 24 rocks of crack (1.9 grams), and a crack pipe. On Booker's person was a beeper, three more .38 caliber wadcutter rounds, and $260 in cash.

Booker was charged in a four count indictment:

Count 1—possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1);

Count 2—distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1);

Count 3—using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and

Count 4—possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Booker admitted that he was carrying the firearm. Booker maintained that he was merely an addict, however, and had the gun purely for the purpose of trading it for three rocks (approximately $60 worth) of crack. He stated that he had never fired a gun and had never used a gun for protection. The prosecution put on experts that testified that while wadcutter ammunition was normally used for target practice, it was cheaper than standard ammunition and nearly as deadly.

The jury returned a verdict of guilty on all counts. Booker moved for a downward departure under U.S.S.G. § 5K2.0 on the grounds that the Sentencing Commission had not adequately considered the disparate impact the more severe crack sentencing provisions would have on African Americans. Booker argued that such a departure was especially appropriate, given that the Sentencing Commission was currently amending the guidelines to equalize the penalties for crack with those for cocaine. The district court concluded that a departure was not warranted under the law. Booker's criminal

history category was II and his offense category was 18. He was sentenced to 30 months for Counts 1, 2, and 4, to be served concurrently, and 60 months for Count 3, to run consecutively with the other terms.

On appeal, Booker raises two arguments. First, that the evidence was insufficient to convict him under 18 U.S.C. § 924(c)(1). Second, that the district court erroneously concluded that it lacked authority to depart downward. Booker maintains that a departure is warranted, as the proposed amendments to the guidelines provide a proper basis for such a departure.[1] The government maintains that the conviction and sentence are proper in all respects.

## ANALYSIS

### 1. Firearm Offense

Section 924(c)(1) provides:

Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... 18 U.S.C. § 924(c)(1).

A conviction under § 924(c) requires proof both that the defendant "used or carried" a firearm and that the use or carrying was "during and in relation to" a drug trafficking crime. *Smith v. United States,* 508 U.S. 223, 226–28, 113 S.Ct. 2050, 2053, 124 L.Ed.2d 138 (1993). Booker bears a heavy burden in challenging the sufficiency of the evidence for his conviction. This court reviews the evidence "in the light most favorable to the government, and the conviction must be upheld if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Taylor,* 31 F.3d 459, 464 (7th Cir.1994). This court will not reweigh the evidence or reassess the credibility of witnesses. *Id.*

---

**1.** Booker has presented little argument as to the merits of the departure—that the impact of the 100 to 1 disparity in sentencing for crack versus cocaine on African Americans was not a matter considered by the Sentencing Commission. The government, however, has addressed the matter in some detail.

■ Booker maintains that § 924(c) should not apply because there was no relationship between his drug offense and his possession of the firearm. Booker raises several arguments: 1) that he never brandished the weapon; 2) that the gun was not a likely defensive weapon, given it was loaded with wadcutter ammunition; 3) that the proximity of the gun to the drugs was fortuitous; 4) that he abandoned the weapon; 5) that the small quantities of cash and narcotics did not make a weapon necessary; 6) that he felt no need for a weapon, as the crack house was not a violent place; and 7) that he never used the weapon in his dealings. Booker relies heavily on *United States v. Taylor,* 31 F.3d 459 (7th Cir.1994) and *United States v. Chairez,* 33 F.3d 823 (7th Cir. 1994).

■ During the consideration of this appeal, however, the Supreme Court issued an opinion which has a substantial impact on § 924 jurisprudence. The Court has held that "use" of a firearm means "active employment" for purposes of § 924(c)(1). *Bailey v. United States,* — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Active employment includes "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at —, 116 S.Ct. at 503. The mere presence of a firearm is not enough to trigger § 924(c)(1); thus placing a gun nearby for possible active offensive or defensive use at some future time is not "use" for § 924's purposes. *Id.* at — – —, 116 S.Ct. at 508–09. The Supreme Court noted that its holding does not limit the "carry" prong of § 924(c). *Id.*[2]

*Bailey* does not change the result for Booker. He concedes that he was carrying the weapon on his person during his drug transaction with Hooper. Further, he stated that he was carrying the weapon to trade it for narcotics. His own statements place him within the "carry" prong of § 924(c). Further, the Supreme Court has held that § 924 applies when a defendant trades a weapon for drugs. *Smith,* 508 U.S. at 240–241, 113 S.Ct. at 2060. The Court held that a defendant in such circumstance has "used" the weapon as "an item of barter" to obtain narcotics. *Id.* at 228–30, 113 S.Ct. at 2054.[3] The Court further concluded that such transactions meet the "in relation to" requirement for § 924 because the gun was an integral part of the narcotics transaction. *Id.* at 237–39, 113 S.Ct. at 2059. Lastly, Booker concedes that his conduct falls squarely in *Smith's* ambit. (Booker's Brief at 5 n. 1).

The § 924 conviction must stand.

*2. Departure*

■ Guidelines § 5K2.0 provides:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

. . . .

An offender characteristic or other circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing.

U.S.S.G. § 5K2.0. *See also United States v. Seacott,* 15 F.3d 1380, 1386 (7th Cir.1994). "In the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized. *See* 18 U.S.C. § 3553(b)." U.S.S.G. § 5K2.0, comment. A district court's interpretation of the guidelines is re-

---

**2.** The Court noted that a defendant who keeps a gun hidden in his clothing during a drug transaction is "carrying" the firearm rather than "using" it. *Id.* at —, 116 S.Ct. at 507.

**3.** *Bailey* is not intended to be inconsistent with *Smith. See Bailey,* — U.S. at —, 116 S.Ct. at 507.

viewed de novo. *United States v. Gaines*, 7 F.3d 101, 103 (7th Cir.1993).

■ Booker maintains that he is entitled to a downward departure because the Sentencing Commission did not consider the disparate impact that the 100 to 1 penalty differential for crack versus cocaine would have on African Americans. Booker argues that the proposed amendments indicate the Sentencing Commission obviously did not consider the racially disparate impact of the penalties when the guidelines were originally promulgated. The government notes that every constitutional challenge to the penalty differential in 21 U.S.C. § 841 and U.S.S.G. § 2D1.1(c)[4] has failed.

The Sentencing Commission had proposed amendments to the sentencing guidelines that would eliminate the penalty differential between cocaine base and cocaine. *See Amendments to the Sentencing Guidelines*, 60 Fed.Reg. 25074 (1995). Absent action by Congress, these amendments would have become effective on November 1, 1995. *Id.* However, a bill rejecting the amendments became law on October 31, 1995 (*See* P.L. 104–38).

■ The general rule is that a defendant is to be sentenced under the guidelines in effect at the time of sentencing. *United States v. Lykes*, 999 F.2d 1144, 1147–48 (7th Cir.1993). Booker correctly notes that this court has held that a subsequent amendment to the guidelines is an appropriate guide for a departure in sentencing a defendant under an earlier version of the guidelines. *See United States v. Rainone*, 32 F.3d 1203, 1208 (7th Cir.1994). In this case, however, the proposed amendments did not become law.

While this court has never dealt with the issue of a departure under § 5K2.0 on the grounds of the racially disparate impact of the crack penalties, this court has universally rejected constitutional challenges to 21 U.S.C. § 841 and U.S.S.G. § 2D1.1(c). *See United States v. Shorter*, 54 F.3d 1248, 1253

n. 11 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 250, 133 L.Ed.2d 176 (1995) (collecting cases); *United States v. Jones*, 54 F.3d 1285, 1293–4 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 263, 133 L.Ed.2d 186 (1995); *United States v. Smith*, 34 F.3d 514, 525 (7th Cir.1994); *United States v. Scott*, 19 F.3d 1238, 1246 (7th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994); *United States v. Chandler*, 996 F.2d 917, 918–19 (7th Cir. 1993); *United States v. Lawrence*, 951 F.2d 751, 755 (7th Cir.1991).

Booker noted that some district courts have granted departures on the ground he argues. However, every circuit court to address the issue has concluded a departure under § 5K2.0 on this basis is not warranted. *See United States v. Alton*, 60 F.3d 1065, 1070–1 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 576, 133 L.Ed.2d 500 (1995) (collecting cases); *United States v. Maxwell*, 25 F.3d 1389, 1400–01 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994); *United States v. Bynum*, 3 F.3d 769, 774–75 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1105, 127 L.Ed.2d 416 (1994); *United States v. Haynes*, 985 F.2d 65, 70 (2d Cir.1993). The *Alton* court noted that the 100 to 1 penalty ratio for crack to cocaine was established by Congress in 21 U.S.C. § 841.[5] 60 F.3d at 1068. *See also Chandler*, 996 F.2d at 918. The *Alton* court further noted that departures are intended to be based on atypicalities peculiar to the offender or the particular crime, not class-wide departures based upon the typical offense. *Id.* at 1071. Booker has shown nothing atypical about himself or his crime to justify a departure under § 5K2.0.

## CONCLUSION

Booker clearly "carried" a firearm in connection with a drug trafficking offense. Further, he has presented no cognizable basis

---

4. Title 21 U.S.C. § 841 provides the statutory penalties for crack offenses. Guidelines § 2D1.1(c), the Drug Quantity Table, provides the penalties under the guidelines for crack offenses, and incorporates the 100 to 1 penalty ratio in 21 U.S.C. § 841.

5. The statutory minimum penalties in 21 U.S.C. § 841 were not applied to Booker, given the small quantity of crack involved.

for a downward departure. We affirm the district court.