89 F.3d 838
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Laward LOONEY, a/k/a Laward Cage, Defendant-Appellant.
 No. 95-3709.
 United States Court of Appeals, Seventh Circuit.
 Argued April 2, 1996.
Decided June 24, 1996.
 
 Before POSNER, Chief Judge, and RIPPLE and MANION, Circuit Judges.
 
 ORDER
 
 1
 Laward Looney dealt crack cocaine from California, supplying his dealers in Illinois by mail. Unfortunately for Looney, the United States postal inspector came across one of his packages, and Looney was convicted of conspiring to distribute crack. On appeal he argues the evidence at trial did not support his conviction and that newly discovered evidence entitles him to a new trial. He also appeals his sentence challenging the penalty structure for cocaine base as violative of the Equal Protection Clause of the Fifth Amendment. We affirm.
 
 I.
 A. Factual Background
 
 2
 In November 1993 Looney mailed a U.S. Mail "Express Mail" package from California to Irene Bounds in Decatur, Illinois. The postal service suspected the package contained drugs, as it contained a fictitious return address and a drug-detecting dog alerted for the presence of illegal drugs. Authorities obtained a search warrant, opened the package, and discovered it contained eight ounces of crack cocaine. The crack was meant for Bounds' son Kashawn White, who dealt crack in Decatur.
 
 
 3
 The authorities sent the package on to Bounds with only one ounce of crack inside and an electronic device which alerted them when the package was opened. After the signal was activated they entered Bounds' residence, found the opened Express Mail package, and retrieved the cocaine from behind a stove. The authorities eventually arrested Bounds, White, and Looney's girlfriend Juanita Johnson, who acted as a messenger between Looney and his co-conspirators in Decatur. Everyone but Looney pleaded guilty to either crack possession or conspiracy to possess crack in connection with this package and cooperated with the government in identifying Looney as the source of the crack. Postal records, money orders, and telephone records inculpate Looney as well.
 
 
 4
 Further investigation by the postal inspector revealed that six other Express Mail packages had been mailed from California and addressed to White and the other co-conspirators. Five of those packages contained crack. The evidence also established that Looney mailed or caused to be mailed each package. Irene Bounds' sister Deborah Bounds received one of the packages and saw crack cocaine inside.
 
 
 5
 The government also presented copies of twelve postal money orders. Johnson testified that she purchased all of them with money from White's sale of crack. Three of the money orders--for $700, $700, and $500--were made payable to a Cassie Haire, who testified that she cashed them and gave the money to Looney. Looney used the same method with another of his associates. Brandon Nero testified he bought three money orders in the same amounts payable to Haire to pay Looney for crack. Johnson purchased the remaining six money orders in her own name, five for $700 each, one for $500. This money also came from the sale of White's crack.
 
 
 6
 Johnson testified that she cashed some of the money orders at a bank and gave the money to Looney. She also testified that she deposited the other money orders at another bank, withdrew the money, and also gave it to Looney. One of her accounts was at the CenFed Bank in Pasadena, California.
 
 
 7
 Bounds, White, and Johnson testified at trial that they would telephone or beep Looney before and after each crack delivery. The government presented as evidence the records of the telephone calls to and from Looney's home in California, Johnson's home in California, Looney's pager in California, and Johnson's phone in Decatur. These records confirmed that several calls and pages took place between Johnson's telephone in Decatur and Looney in California. Many of the calls surrounded the dates of the Express Mail packages. Likewise, numerous calls surrounded the dates the co-conspirators purchased the postal money orders.
 
 B. Procedural Background
 
 8
 A grand jury indicted Looney for violating 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii) for possession with intent to distribute crack cocaine. Looney pleaded not guilty but a jury found otherwise, deliberating just 37 minutes. Looney filed motions for judgment of acquittal at the close of the government's case and at the close of the entire case. The district court denied both.
 
 
 9
 Looney later filed a motion for new trial based on the "newly discovered evidence" of an affidavit from the records custodian at Johnson's bank which stated that Johnson did not deposit any money orders during the time frame she claimed. The district court held a hearing on the motion and denied it. The district court then sentenced Looney to 151 months in prison followed by five years supervised release. Looney filed a timely appeal of his conviction and his sentence.[1]
 
 II.
 
 10
 A. Sufficiency Of The Evidence Against Looney
 
 
 11
 Looney contends first that his conviction was not supported by sufficient evidence and therefore that it should be vacated. On appeal he challenges the trial testimony of Johnson, Bounds, and White as "vague, speculative, and ambiguous." [Blue Br. p. 16] Looney does not argue that a conspiracy did not exist. Rather, he contends he cannot be linked to the crack.
 
 
 12
 In considering such an argument we view the evidence at trial in the light most favorable to the government in determining whether any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Monroe, 73 F.3d 129, 131 (7th Cir.1995). To prove Looney guilty the government need to prove the following beyond a reasonable doubt: (1) a crack cocaine conspiracy existed from June to November 1993; (2) Looney knew of the conspiratorial agreement; and (3) Looney intended to join the conspiracy. United States v. Theodosopolous, 48 F.3d 1438, 1449-50 (7th Cir.), cert. denied sub nom. Ghanayem v. United States, 116 S.Ct. (1995).
 
 
 13
 The evidence at trial does not support Looney's assertion that he has no connection to the crack cocaine. Bounds testified she heard Johnson ask Looney to send the drugs and Looney admitted to Bounds that he sent the package containing crack cocaine to Decatur. White testified he sold crack in Decatur which was supplied by Looney. Johnson testified she discussed selling crack with White and Looney. Johnson also testified that White gave her money from the sale of crack which she then gave to Looney. Cassie Haire testified she gave money from crack sales to Looney. The telephone calls between Looney and the co-conspirators in Decatur surrounding the delivery of the October 1993 package and August 1993 postal money orders corroborate the co-conspirators' testimony that Looney requested telephonic confirmation of delivery of the packages of crack. From this evidence the jury could have easily concluded that Looney was the hub of the whole conspiracy.
 
 
 14
 Because, viewing the evidence in a light most favorable to the government, sufficient evidence was presented for a rational jury to conclude that Looney knew of (indeed participated in) the Decatur crack cocaine conspiracy, we will not vacate his conviction on this ground.
 
 B. Newly Discovered Evidence
 
 15
 Looney also claims that newly discovered evidence--an affidavit from the records custodian at one of Johnson's banks, CenFed Bank in Pasadena, which stated Johnson did not "deposit" the money orders--entitles him to a new trial. We review the district court's decision to deny the defendant's motion for new trial on account of newly discovered evidence for abuse of discretion. Theodosopoulos, 48 F.3d at 1448. To be granted a new trial the newly discovered evidence must probably lead to an acquittal on retrial. See United States v. Fruth, 36 F.3d 649, 652 (7th Cir.), cert. denied, 115 S.Ct. 1168 (1995) (newly discovered evidence must, among other things, probably lead to an acquittal in the event of retrial).
 
 
 16
 Johnson testified she deposited the money orders at CenFed bank, used her account number, and gave the money to Looney. The affidavit from the records custodian of that bank stated Johnson did not "deposit" the money orders. Johnson did, however, cash the money orders at the bank and use her account number.
 
 
 17
 The affidavit merely points to a minor discrepancy in the way the money got to Looney. Whether she "deposited" the money orders is not material. Either scenario, "deposit" or "cash," supports Looney's guilt. The material fact is that Johnson gave the money to Looney. The slight discrepancy in Johnson's testimony would only allow cross-examination on a non-dispositive issue. In all likelihood it would do little or nothing to alter her credibility. Accordingly, we cannot conclude the jury would have reached a different conclusion had it know she cashed rather than "deposited" the money orders and then immediately withdrew the cash from her account.
 
 
 18
 A defendant seeking a new trial under these circumstances must demonstrate prejudice "not as a matter of speculation but as a demonstrable reality." United States v. Reed, 2 F.3d 1441, 1451 (7th Cir.), cert. denied, 114 S.Ct. 898 (1994). Looney has failed to do so. The district court concluded that Johnson's testimony with regard to the money orders was mistaken rather than false. It did not abuse its discretion in so concluding and denying Looney's motion for new trial.
 
 C. Penalty Structure For Cocaine Base
 
 19
 Finally, Looney challenges the penalty structure for cocaine base as violative of the Equal Protection Clause of the Fifth Amendment. He asserts that by providing equal penalties for crimes involving 100 times more powder than crack cocaine, the United States Sentencing Guidelines racially discriminate because blacks[2] account for a high percentage of federal convictions for crack and a low percentage of convictions for powder cocaine. We review this pure question of law de novo.
 
 
 20
 Looney's constitutional challenge is barred by controlling Seventh Circuit precedent. United States v. Booker, 73 F.3d 706, 710 (7th Cir.1996) (collecting cases); United States v. Shorter, 54 F.3d 1248, 1253 n. 11 (7th Cir.1995) (collecting cases), cert. denied, 116 S.Ct. 250 (1995); United States v. Chandler, 996 F.2d 917, 918-19 (7th Cir.1993). Looney has not provided a good reason to reconsider these decisions, and we do not do so.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The district court had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231 (offenses against the laws of the United States). This court properly has jurisdiction pursuant to 28 U.S.C. § 1291 (final judgment) and 18 U.S.C. § 3742(a)(2) (review of a sentence, appeal by a defendant for incorrect application of the Sentencing Guidelines)
 
 
 [2]
 The record does not indicate Looney's race. We presume from his advancing this argument that he is black