Garrie L. STANBACK, Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 96–3469.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1997.

Decided April 30, 1997.*

* This opinion was previously released in typescript form.

Carol A. Brook, Mary M. Rowland (argued), Office of the Federal Defender Program, Chicago, IL, for Petitioner–Appellant.

Barry Rand Elden, Chief of Appeals, Duane Deskins (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Respondent–Appellee.

Before ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Nearly four years ago, Garrie Lucky Stanback pled guilty to using or carrying a firearm during and in relation to the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). Following the Supreme Court's opinion in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which defined "use" of a firearm for purposes of section 924(c)(1) more narrowly than we had before, Stanback asked the district court to vacate his conviction pursuant to 28 U.S.C. § 2255. The district court denied relief, concluding that even if Stanback had not "used" a firearm in a way that satisfied *Bailey*, he nonetheless had "carried" it and thus was properly convicted under section 924(c). Because we find the facts underlying Stanback's plea insufficient to establish that he either "used" or "carried" a firearm in a manner proscribed by the statute, we reverse.

## I.

Based on a confidential informant's purchase of cocaine from Stanback on two occasions early in 1992, agents of the Bureau of Alcohol, Tobacco and Firearms, acting in concert with members of the Evanston police department, secured a warrant from a federal magistrate judge to search Stanback's residence on the far north side of Chicago. When law enforcement personnel entered Stanback's apartment on the evening of March 19 to execute the warrant, they found Stanback and two other people standing in his living room. In the middle of the room an overturned box served as a makeshift coffee table. On top of the box lay a loaded Smith & Wesson .38 caliber revolver, a triple-beam scale bearing a white powder residue, two bottles of Inositol (an agent commonly used to "cut" cocaine for distribution), fifteen "pony packs" of powder cocaine, thirty small sheets of paper suited to making such packs, a video cassette case containing additional powder cocaine, and approximately $126 in U.S. currency. Stanback was placed under arrest and advised of his *Miranda* rights. After executing a waiver of those rights, Stanback acknowledged to the agents that the gun and the narcotics were his, that he had been selling narcotics for about seven years, and that he had been cutting and packaging cocaine for distribution when the agents and police officers had entered his apartment.[1] Stanback insisted that the other two people in the apartment had nothing to do with either the guns or the cocaine, however, and they were neither taken into custody nor charged with any offense. A grand jury subsequently indicted Stanback on charges that he had possessed approximately 16.5 grams of cocaine with the intent to distribute (21 U.S.C. § 841(a)(1)), "used and

---

1. Stanback also provided information and assistance to the agents that resulted in the arrest of several other individuals.

carried" a firearm during and in relation to the commission of a drug trafficking crime (18 U.S.C. § 924(c)(1)), and possessed a firearm after previously having been convicted of an offense punishable by imprisonment for a term of more than a year (18 U.S.C. § 922(g)(1)).

In July 1993, Stanback agreed to plead guilty to possessing the cocaine with the intent to distribute (Count One of the indictment) and to using and carrying a firearm in connection with the narcotics offense (Count Two), and the government agreed to dismiss the felon-in-possession charge. In a written plea agreement, Stanback admitted to the following in regard to the section 924(c) charge:

> With respect to Count Two of the indictment, on March 19, 1992, the defendant used and carried a firearm, namely his Smith and Wesson .38 caliber revolver, serial number BDW7583, during and in relation to a drug trafficking crime, namely the offense described in subparagraph (a) above and charged in Count One of this indictment. On the evening of March 19, 1992, the defendant carried and possessed the above-described firearm as he prepared the cocaine for distribution and in relation to those activities.

R. 30 at 3 para. 5(b). A change of plea hearing took place on the same day that Stanback signed the plea agreement. When the district judge asked the government to summarize the evidence that it would present if the case went to trial, the prosecutor remarked that "[w]ith respect to Count 2 of the indictment, the evidence would show that on March 19, the defendant used and carried [a] firearm, namely, his Smith and Wesson .38 caliber revolver, serial number listed in the plea, during and in relation to the drug trafficking crime, namely, the offense described previously and charged in Count 1." July 6, 1993 Tr. at 20. When asked whether the prosecutor's statement was correct, Stanback answered that it was and that he disagreed with no part of it. *Id.* at 20–21. The district court, finding that Stanback's proffered plea of guilty had an independent basis in fact and that Stanback was competent and willing to plead guilty, accepted his plea and adjudged

him guilty of the two charges. *Id.* at 21. Three months later, the court ordered Stanback to serve a prison term of sixteen months (the top of the applicable sentencing range) on the narcotics charge and a consecutive term of five years on the firearm charge, as required by statute. R. 32; *see* 18 U.S.C. § 924(c)(1).

In 1995, following the Supreme Court's decision in *Bailey,* Stanback moved to vacate his conviction under section 924(c) and the corresponding five-year sentence that the district court had imposed. The government argued that Stanback's decision to plead guilty barred a collateral attack upon his conviction, but the court rejected that assertion and permitted the challenge. "Here, it appears that Stanback, his counsel and indeed, the government and the Court all misunderstood the requirements for a conviction for 'use' under section 924(c)(1) at the time of Stanback's plea." *United States v. Stanback,* 1996 WL 435107, *3 (N.D.Ill. July 31, 1996). The court proceeded to examine the facts to which Stanback had stipulated in pleading guilty, which we have recounted above. Although the court assumed that these facts might not suffice to establish that Stanback had "used" the gun in a way that would satisfy *Bailey*'s definition of "use," it found them sufficient to establish that he had "carried" the gun. *Id.* *4.

> Although Stanback was not carrying the gun at the time of his arrest, the facts as admitted in the plea agreement and in open court[ ] do support the inference that he had carried it at some time that night while he possessed the cocaine. First, at the time of the arrest, Stanback immediately admitted that the drugs, drug paraphernalia and the gun, which were all together on the table, were his. Second, the gun was immediately available to Stanback as he was "cutting" and packaging the cocaine—it was not hidden; it was not in another room. In light of these facts, it is reasonable to assume that Stanback carried the gun while he transported the cocaine, as he admitted at the time of his plea. Thus, there is a sufficient factual basis to support Stanback's plea and in turn, his conviction.

*Id.* The court accordingly denied Stanback's request for relief under section 2255.

## II.

The steadily growing number of recent cases in which we have considered the validity of pre-*Bailey* convictions under section 924(c) makes it unnecessary for us to recount the facts and holding of *Bailey* at any length. It is sufficient to note that before *Bailey*, this circuit, like a number of others (*see Bailey*, —— U.S. at ——, 116 S.Ct. at 505), had concluded that the defendant's mere possession of a firearm or storage of a firearm in relatively close proximity to narcotics was sufficient to constitute a "use" of the firearm for purposes of section 924(c)(1). *See United States v. Monroe*, 73 F.3d 129, 132–33 (7th Cir.1995) (collecting cases). The Supreme Court in *Bailey* rejected that expansive view of "use," holding that one must "actively employ" the gun in relation to a drug trafficking offense—by "brandishing, displaying, bartering, striking with, and most obviously firing or attempting to fire" it, for example—before one may be said to have "used" the gun in violation of the statute. —— U.S. at ——–——, 116 S.Ct. at 508–09.

Stanback argues that the record underlying his guilty plea is not sufficient to establish either that he "used" a firearm in the sense that *Bailey* requires or that he handled it in any of the ways we have cited as examples of "carrying." At most, he reasons, the admitted facts indicate that his revolver merely "lay inert next to other materials on a table." Stanback Br. 13. That, he submits, does not constitute an active employment of the firearm. Nor do his admissions establish that he ever "carried" the revolver. Mere presence of the firearm in his apartment is not enough to establish "carrying" for purposes of section 924, he contends, and the record is devoid of any evidence that he had transported the revolver in connection with the narcotics offense to which he also pled guilty. The district court's supposition that he likely carried the gun at some point on the evening of his arrest is speculative in Stanback's view: "Based on this record, the gun and the drugs could have been sitting on that table for days." Stanback Br. 20. Thus, absent a more detailed set of admitted facts akin to the record before us in *United States v. Damico*, 99 F.3d 1431 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1086, 137 L.Ed.2d 220 (1997), we simply cannot sustain his conviction based solely on the admission below that he had "used and carried" a firearm during and in relation to the narcotics offense.

█ The government initially renews the threshold argument it made below concerning Stanback's ability to collaterally attack his conviction under section 924(c)(1) after pleading guilty to that charge—with a new twist. In the district court, the government contended broadly that Stanback's guilty plea foreclosed collateral review on the basis of *Bailey* altogether. R. 47. That particular argument we rejected squarely in our decision today in *Lee v. United States*, 113 F.3d 73, 75–76 (7th Cir.1997). In electing to plead guilty, we explained, the defendant waives a challenge to the facts underlying the charge, but he does not waive the right to contest whether those facts are sufficient to constitute a crime. *Id.* at 76–77. "*Bailey* altered what facts are sufficient to prove 'use' under § 924(c). Whether the underlying facts are found by a jury or admitted by a defendant should have no bearing on whether those facts add up to what is now required to show 'use' of a firearm." *Id.* at 75; *see also United States v. Abdul*, 75 F.3d 327, 329–30 (7th Cir.) (relying on *Bailey* to vacate conviction entered on guilty plea), *cert. denied*, —— U.S. ——, 116 S.Ct. 2569, 135 L.Ed.2d 1085 (1996); *United States v. Cleveland*, 106 F.3d 1056, 1064–69 (1st Cir. 1997); *United States v. Cruz–Rojas*, 101 F.3d 283, 284–85 (2d Cir.1996); *United States v. Mitchell*, 104 F.3d 649, 652 & n. 2 (4th Cir. 1997); *United States v. Barnhardt*, 93 F.3d 706, 708 (10th Cir.1996); *United States v. Ruth*, 100 F.3d 111, 112–13 (10th Cir.1996); *contra Bousley v. Brooks*, 97 F.3d 284, 287–88 & nn. 2–4 (8th Cir.1996), *petition for cert. filed* (U.S. Mar. 18, 1997) (No. 96–8516).[2]

---

**2.** Our willingness to entertain *Bailey* challenges

in section 2255 proceedings reflects our belief

■ What the government adds on appeal is that even if *Bailey* opens the door to collateral attacks on convictions for "use" of a firearm alone, when the defendant has pled guilty to both "using" and "carrying" and he has not taken a direct appeal to challenge the factual basis for the plea to "carrying," then he has foregone the right to mount that challenge on collateral review. See *Broadway v. United States*, 104 F.3d 901, 903 (7th Cir.1997). *Bailey* itself does not excuse Stanback from having to appeal the factual basis underlying a conviction for "carrying," as the government sees it, because *Bailey* dealt solely with the "use" prong of the statute and left undisturbed the existing case law on "carrying." See *id.* at 903–04 (holding a post-*Bailey* collateral challenge to "carrying" conviction procedurally barred, because petitioner's arguments "have nothing to do with *Bailey*" and could have been raised on direct appeal). And because the conviction can be sustained on the basis of "carrying" alone, if Stanback is barred from questioning the adequacy of the factual basis for the "carrying" component of his plea, then his conviction and sentence must stand even if we think there is not a factual basis for "use" in light of *Bailey*.

This argument is implicitly rejected by our opinion in *Lee*, which considered the sufficiency of the evidence with respect to both the "using" as well as the "carrying" prongs of section 924 despite the fact that the defendant had never taken a direct appeal (113 F.3d at 76–77; see also *Ruth*, 100 F.3d at 113), and practical considerations justify that approach. Recall that prior to *Bailey* we

defined "use" so broadly that the defendant's mere possession of a firearm in "strategic proximity" to drugs was enough to establish that he "used" the gun for purposes of section 924(c). *United States v. Robinson*, 96 F.3d 246, 250 n. 9 (7th Cir.1996) (quoting *United States v. Woods*, 995 F.2d 713, 718 (7th Cir.1993)); see *Monroe, supra*, 73 F.3d at 132–33. As the Supreme Court recognized in *Bailey*, such a "a broad reading of 'use' undermines virtually any function for 'carry.'" —— U.S. at ——, 116 S.Ct. at 507. Indeed, it was in part because the Court assumed that Congress intended for the two terms to have distinct meanings that it adopted a more narrow construction of "use" than we had previously. *Id.* What that reveals, however, is that before *Bailey*, when a defendant conceded "use" in this circuit, an additional concession that he "carried" was typically beside the point. Neither the parties nor the court had any reason to develop a distinct factual basis for a conviction under "carrying" alone. See *Cruz–Rojas*, 101 F.3d at 285. And where exactly would Stanback have gotten with a pre-*Bailey* appeal contending that there was an inadequate basis to sustain his conviction on the basis of "carrying" alone? Nowhere, given our expansive understanding of "use" at that time. Only after *Bailey* has the existence of a factual basis for "carrying" become critical. *Id.*; see also *United States v. Manning*, 79 F.3d 212, 216 (1st Cir.) ("By narrowing the interpretation of 'use' to instances of active employment, the *Bailey* court recognized that the 'carry' prong would take on a new significance."), cert. denied, —— U.S. ——, 117

that *Bailey* applies retroactively to cases on collateral review. Relative to the prior law of this circuit regarding the "use" of a firearm for purposes of section 924, *Bailey* announced a new rule of substantive law, with the result that convictions obtained in advance of *Bailey* may have been premised on conduct that is no longer regarded as criminal. Retroactive application of *Bailey* is appropriate in this circumstance, as the district court recognized. *Stanback*, 1996 WL 435107, *2–3; see *Davis v. United States*, 417 U.S. 333, 345–47, 94 S.Ct. 2298, 2304–05, 41 L.Ed.2d 109 (1974). *Accord Barnhardt*, 93 F.3d at 708–09; see also *United States v. Joseph*, 109 F.3d 34, 36 (1st Cir.1997) (assuming without deciding that *Bailey* applies retroactively on collateral review); *id.* n. 2 (collecting cases); *Cor-*

*coran v. Sullivan*, 112 F.3d 836, 837–38 (7th Cir.1997). Of course, because *Bailey* did not articulate a new rule of constitutional law, and because the Supreme Court itself has not made *Bailey* retroactive to cases on collateral review, section 2255 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 would not permit a second or successive petition for collateral relief based on *Bailey*. *Nuñez v. United States*, 96 F.3d 990, 992 (7th Cir.1996); see also *United States v. Lorentsen*, 106 F.3d 278, 279 (9th Cir.1997) (collecting cases). But this is Stanback's first request for relief under section 2255, so he need not rely on a new rule of constitutional law made retroactive by the Supreme Court in order to avail himself of the remedies that section 2255 permits.

S.Ct. 147, 136 L.Ed.2d 93 (1996); *United States v. Muscarello,* 106 F.3d 636, 639 (5th Cir.1997) (per curiam) (acknowledging that "*Bailey* indirectly heightened the focus on the *carrying* facet of § 924(c) by narrowing the use facet") (emphasis in original), *petition for cert. filed* (U.S. Apr. 18, 1997) (No. 96–1654); *United States v. Moore,* 76 F.3d 111, 113 (6th Cir.1996) ("Our pre-*Bailey* definition of 'use' was so broad that neither party had a reason to focus on the factual issues relevant to the 'carry' prong....."). (Contrast our decision in *Broadway, supra,* 104 F.3d at 903–04, in which we found collateral review of pre-*Bailey* section 924(c) conviction to be foreclosed where the defendant had been convicted on the "carrying" prong of the statute alone and thus had no reason not to have challenged this conviction on direct appeal.) These unique circumstances permit Stanback to seek relief under section 2255.

Our task at this juncture, then, is to examine the facts underlying the charge to which Stanback pled guilty and to determine whether those facts are sufficient to establish that he either "used" or "carried" a firearm as those terms are used in section 924(c). *See* FED.R.CRIM.P. 11(f) (court shall not enter judgment upon a guilty plea without first satisfying itself that there is a factual basis for the plea); *Lee,* 113 F.3d at 76–77; *Damico,* 99 F.3d at 1434–35; *Mitchell,* 104 F.3d at 652–53; *Cruz–Rojas,* 101 F.3d at 285–86; *Barnhardt,* 93 F.3d at 710–11; *see also, e.g., Cleveland,* 106 F.3d at 1065, 1068–69; *Ruth,* 100 F.3d at 113.[3]

■ All that we can discern from the limited record before us is that Stanback's Smith & Wesson revolver was resting on the ersatz coffee table while Stanback cut the cocaine and packaged it for distribution; yet in the government's view, this is still enough to establish "use" as *Bailey* defined that term. The government's understanding rests upon the Supreme Court's observation in *Bailey* that the defendant's "reference to a firearm [in his possession] calculated to bring about a change in the circumstances of the

predicate offense is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be 'use.'" —— U.S. at ——, 116 S.Ct. at 508. As the government construes the facts, the "silent but obvious and forceful presence of a gun on a table" is exactly what we have here. What is missing, however, is any evidence from which one might reasonably infer that the placement of the gun on the coffee table was anything more than fortuitous—in other words, that Stanback placed it there (if indeed he placed it there) in open view to convey the same type of intimidating message that a bank robber sends when he declares to a teller, "I have a gun." *United States v. Jones,* 84 F.3d 1206, 1211 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996); *see also, e.g., United States v. Czeck,* 105 F.3d 1235, 1240–41 (8th Cir.1997) (defendant, *inter alia,* overheard to remark that he had a .357 available if his neighbors did not care for his narcotics trafficking); *United States v. Anderson,* 89 F.3d 1306, 1315 (6th Cir.1996) (defendant reached for gun as police entered his apartment), *cert. denied,* —— U.S. ——, 117 S.Ct. 786, 136 L.Ed.2d 728 (1997). There were, it is true, two other people in Stanback's living room when the authorities arrived to arrest him. Certainly it is possible that they were present to conduct a narcotics-related transaction with Stanback and that he placed the gun in plain sight to bring about a change in circumstances by delivering the type of silent but forceful message to which *Bailey* refers. But this is no more than a possibility. There is no evidence indicating that Stanback's guests were transacting any kind of business with him; for that matter, the record is devoid of evidence discrediting Stanback's insistence that his guests had nothing whatever to do with his cocaine trafficking. *See United States v. Rodriguez,* 1996 WL 420296, *6–7 (N.D.Ill. July 25, 1996) (Leinenweber, J.) (finding "use" where defendant summoned his customers into his bedroom, where he had pistol displayed, to receive narcotics payment; "payment for the cocaine was a crucial stage

---

**3.** The fact that the indictment alleges that Stanback "used *and* carried" a firearm does not require proof that he in fact did both in order to sustain his conviction. As our colleagues in the

Fifth Circuit have observed, "using" and "carrying" may be pled conjunctively but proven disjunctively. *Muscarello,* 106 F.3d at 637 n. 2; *see also Damico,* 99 F.3d at 1434.

in the transaction ...."), distinguishing *United States v. Moore, supra,* 76 F.3d at 113 (finding no "use" where defendant was merely discovered sleeping in room where several guns strewn about). Absent any evidence in that vein, only speculation will permit us to construe the mere presence of the gun on the table as the kind of "active employment" that *Bailey* requires as a precondition to conviction for "use" of the firearm.

■ Having found no evidence that Stanback "used" the gun, we consider next whether he "carried" it. What distinguishes "carrying" is the connotation of transportation (*United States v. Baker,* 78 F.3d 1241, 1247 (7th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1720, 137 L.Ed.2d 842 (1997)), and thus the central question here is whether there is evidence showing that Stanback transported the weapon. Two theories are put before us. The first is the one that the district court advanced: Although Stanback was not actually carrying the gun at the time of his arrest, the fact that the gun belonged to him and was immediately accessible to him while he cut and packaged the cocaine permits the reasonable inference that he had carried it at some time that night while he possessed the cocaine. *Stanback,* 1996 WL 435107, *4. The second is a broader argument that the government advances: "Carry" is a readily understood word, and section 924(c) embraces that word's ordinary meaning (*see Smith v. United States,* 508 U.S. 223, 228, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993)); thus, having admitted in the course of pleading guilty that he "carried" the gun, Stanback admitted that he carried it in the factual as well as the legal sense of the word. In other words, as the government sees it, there is no need for specific evidence to the effect that Stanback picked up the gun, walked across his living room, and placed it on the coffee table, for example; having already acknowledged that he "carried" the weapon, Stanback has conceded that he did just this or some other act that falls within the ordinary understanding of the word. Neither theory, we conclude, is sufficient to sustain his conviction.

The district court's rationale, although not inconsistent with the few facts that we know, depends on an inference that cannot reasonably be made without additional evidence that this record simply does not contain. Again we are dealing with possibilities: Stanback may have carried the weapon earlier that evening in connection with his possession and preparation of the cocaine for distribution, but it could also be that he did not.[4] In view of the very few facts we have in the record, it is equally possible that the gun was placed on the table before Stanback even acquired that cocaine; it is also possible that someone else carried the gun to the table, notwithstanding the fact that the gun belonged to Stanback. Thus, although the scenario that the district court envisioned is certainly plausible, nothing in the record tends to confirm that scenario to the reasonable exclusion of other scenarios that do not involve Stanback transporting the gun. In that respect, this case is similar to *United States v. Hightower,* 96 F.3d 211 (7th Cir. 1996), where a gun was found in the defendant's hotel room underneath the mattress of a bed on which the defendant was lying when he was arrested. We found that the record was insufficient to sustain his conviction under the "carry" prong of section 924(c) absent evidence that the defendant or one of his coconspirators had brought the gun into the room. *Id.* at 215. *See also United States v. Cooke,* 110 F.3d 1288, 1296 (7th Cir.1997) (mere presence of gun in bed of

---

4. In the version of the offense that it submitted to the probation officer for purposes of the presentence report, the government noted that when its confidential informant purchased cocaine from Stanback in early 1992, Stanback had in his possession the .38 caliber revolver. R. 60, Government's Official Version of the Offense at 1. No reference was made to this observation either in the plea agreement or during the plea colloquy, and it was not otherwise part of the record before the district judge at the change of plea hearing, and so we do not think it in any way bolsters the factual basis for Stanback's plea. In any event, the pertinent question is whether Stanback carried the revolver in relation to the narcotics offense for which he was indicted—*i.e.,* his possession of 16.5 grams of cocaine on or about March 19, 1992 with the intent to distribute. The government's version of the offense does not suggest that the prior sightings of Stanback's gun had anything to do with his possession of cocaine on that date, nor, for that matter, that he was "carrying" the gun on those prior occasions.

truck with chemical used to manufacture PCP insufficient to establish "carrying" absent evidence that truck was ever used to transport the weapon).

■ We are not persuaded by the government's contention that when he admitted to having "carried" the gun, Stanback admitted having committed the type of act that the word "carrying" normally brings to mind. It is true, we should point out at the outset, that nothing in *Bailey* altered what we had previously understood "carry" to mean for purposes of section 924(c); *Bailey*'s analysis is restricted to the companion term "use." *United States v. Cotton,* 101 F.3d 52, 56 (7th Cir.1996); *Broadway,* 104 F.3d at 904. If it were clear from the record, then, that Stanback committed some act that constituted "carrying" as we have defined that term for purposes of section 924(c), it would be entirely appropriate to give force to Stanback's separate admission that he "carried" a firearm notwithstanding *Bailey*'s subsequent clarification as to the meaning of "use." That is the message of *Damico,* 99 F.3d at 1433–35. But Stanback's counsel quite correctly distinguishes *Damico* on the basis of the specific factual admissions that the record included in that case: In acknowledging that he had "used" and "carried" a firearm in violation of section 924(c), Damico specifically conceded that his primary co-conspirator had "carried" a firearm to Wisconsin for the agreed upon purpose of robbing the participants in a card game. *See id.* at 1433, 1434. That concession supplied the factual basis on which we sustained Damico's guilty plea. *Id.* at 1434–35.[5] We have no comparable concession here. Stanback merely admitted conclusorily that he had "used and carried" and "carried and possessed" the firearm. Pragmatically speaking, he merely conceded culpability in the language that the statute uses without acknowledging any concrete facts that fall within the meaning of "carrying." And we do not think we can supply those

facts post hoc by saying that Stanback, in admitting that he "carried" a firearm, admitted any and all conduct that the word "carrying" ordinarily brings to mind.

This would be a different case if Stanback had acknowledged, for example, that on the day of his arrest, he had gone out to meet with his supplier in the Loop in order to obtain the cocaine he was discovered packaging that evening, and that he had taken the revolver with him on that errand for protection. The natural inference from such an admission would be that Stanback traveled from one part of Chicago to another with the gun either on his person or somewhere readily accessible to him (*e.g.,* underneath the front seat of his car). That scenario fits comfortably within the notion of "carrying" the firearm. *E.g., United States v. Barnhardt, supra,* 93 F.3d at 710–11 (defendant had gun tucked into back of his pants when he met with supplier to purchase kilogram of cocaine); *Baker,* 78 F.3d at 1247–48 (gun found underneath front seat of car on top of bag of crack cocaine when defendant pulled over in traffic stop). Certain questions might be left unanswered by the admission— in particular, where exactly the gun was located—and it is possible to imagine answers that would remove the conduct from the universe of acts we have identified as "carrying." *See Cooke,* 110 F.3d 1288, 1297–98. But that is where the government's argument would carry the day: having admitted to particular facts which on their face reasonably suggest that the firearm was "carried," a defendant could not escape his guilty plea simply because there is a theoretical chance that additional unknown facts might cast doubt on that inference. Thus in *Damico,* we did not find it necessary to vacate the defendant's guilty plea because the record did not reveal where exactly his coconspirator had kept the firearm while en route to the card game targeted for robbery. 99 F.3d at 1435.[6] Nothing suggested that Damico

---

5. The conspiracy charge to which Damico pled guilty rendered him accountable not only for his own acts but the reasonably foreseeable acts of his coconspirators committed in furtherance of the conspiracy. *Lee v. United States, supra,* 113 F.3d at 76.

6. Damico suggested that the firearm might have been stashed in the trunk of his co-conspirator's car, beyond his immediate reach. Prior cases had reserved judgment on whether this would constitute "carrying" under section 924(c). *See Damico,* 99 F.3d at 1435. That issue remains the subject of debate in this circuit. Compare *Cooke,*

was ignorant of this fact when he pled guilty; consequently, any argument that the gun had not been "carried" because it was placed somewhere inaccessible to his co-conspirator during the drive to Wisconsin had been waived. *Id.* For purposes of sustaining Damico's conviction, it was enough that Damico had admitted as a background fact that the coconspirator had taken the firearm to Wisconsin with him for the purpose of committing the robbery. *Id.*

Here we have only boilerplate to go on. Beyond admitting generally that he "used and carried," "carried and possessed" the Smith & Wesson revolver, Stanback acknowledged no specific facts reasonably establishing that he handled the gun in one of the various ways we have recognized as "carrying." And although *Bailey* had no impact on our understanding of what constitutes "carrying," it is important to consider in context Stanback's pre-*Bailey* concession that he "used and carried" a firearm. Recall once again that prior to *Bailey* we defined "use" "quite broadly." *United States v. Robinson, supra,* 96 F.3d at 250; *see also Broadway v. United States,* 104 F.3d at 902–03. The fact that Stanback's gun was found in close proximity to the cocaine he was packaging for distribution was alone enough to establish his "use" of the weapon under our expansive understanding of that term. *Robinson,* 96 F.3d at 250 n. 9. That "broad reading of 'use' undermine[d] virtually any function for 'carry.'" *Bailey,* —— U.S. at ——, 116 S.Ct. at 507. Against that backdrop, it is a dubious enterprise to read much into Stanback's generic admission that he also "carried" the gun; given the breadth that we formerly accorded to "use," "carrying" was virtually superfluous. *Id.; see United States v. Cruz–Rojas, supra,* 101 F.3d at 285. If the facts of record had shown that he actually did "carry" the gun, as they did in *Damico,* then it would be fair to conclude that Stanback was on notice of the import of his admission with respect to "carrying" and appropriate to sustain his plea on that basis. But we have nothing like that here.

110 F.3d 1288, 1297 (majority) (reserving judgment on the question) with *id.* at 1302 (Coffey, J.,

### III.

Because the record does not reflect an adequate factual basis for Stanback's plea of guilty to "using" or "carrying" a firearm during and in relation to a narcotics trafficking offense, he is entitled to relief under 28 U.S.C. § 2255. We therefore reverse the district court's judgment and remand with directions to vacate Stanback's conviction and sentence on Count Two of the indictment and to conduct such other proceedings as may be consistent with this opinion. Because Stanback has already completed his sixteen-month sentence on Count One of the indictment and has already served a substantial portion of the consecutive five-year sentence on Count Two, the mandate shall issue immediately.

REVERSED AND REMANDED WITH DIRECTIONS.

concurring) and *id.* at 1302 (Diane P. Wood, J., concurring).