Thomas A. **WOODRUFF**, Petitioner–Appellant,

v.

**UNITED STATES of America**, Respondent–Appellee.

No. 96–3692.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1997.

Decided Dec. 15, 1997.

Rehearing Denied Feb. 12, 1998.

Mark S. Rosen (argued), Rosen & Holzman, Waukesha, WI, for Petitioner–Appellant.

Mel S. Johnson (argued), Office of the United States Attorney, Milwaukee, WI, for Respondent–Appellee.

Before CUMMINGS, MANION, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Once again, we are called upon to decide whether the Supreme Court's decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), requires new proceedings of any kind for a criminal defendant. Thomas A. Woodruff pleaded guilty to both a drug offense and a violation of 18 U.S.C. § 924(c), he took no direct appeal from his conviction or sentence, and he then presented a petition under 28 U.S.C. § 2255 to the district court seeking to withdraw his guilty plea on the § 924(c) charge and to vacate his conviction on that count. The district court denied the petition, and we affirm.

Woodruff's conviction was the ultimate result of a traffic stop effected by the West Milwaukee police. Conducting a search incident to the stop, the police found 12.8 grams of cocaine in his car. (Woodruff initially argued that it was "just" 11.8 grams, but he later acknowledged that the discrepancy was immaterial. We therefore use the amount reflected in the Presentencing Report and the police report.) Woodruff's responses to questioning led the police to search (with a warrant) the house Woodruff shared with Henry "Corvette" Bams, where they found another 131 grams of cocaine, $56,000 of Bams' money, and three handguns: a Smith & Wesson 9mm semiautomatic handgun, a Rossi .38 special revolver, and a Glock .40. One of the guns was found, unloaded, in Woodruff's room, and the other two were found, loaded, in Bams' room.

These discoveries eventually blossomed into a twenty-three count indictment involving Woodruff and fourteen co-defendants, charging the defendants with a variety of cocaine distribution, money laundering, and firearm offenses, and also including counts for forfeiture. Woodruff himself was named in count I (conspiracy to distribute cocaine), count XIV (possession of cocaine with intent to distribute), and count XXIII (using and carrying a firearm during and in relation to the drug offenses in violation of § 924(c)). He pleaded guilty to counts I and XXIII on December 22, 1992, at a hearing before the district court. Woodruff there admitted that he understood the terms of the agreement. Specifically with respect to count XXIII, the following exchange took place between him and the court:

[THE COURT] Q: And what do you understand to be the charge in count 23?

[WOODRUFF] A: Count 23 states that me—me, myself, and other people carried firearms or used firearms to I guess protect drugs or in drug trafficking.

Q: Or at least involved in the drug trafficking in some fashion.

A: Yes.

Q: Is that right?

A: Yes, sir.

Later in the plea hearing, the government stated that among the evidence establishing the overall conspiracy was information showing that the defendants were regularly in possession of firearms, as well as pagers, mobile phones, and the like; that ten searches under warrant had been conducted resulting in the seizure of significant amounts of cocaine and other drug paraphernalia and records; and that it had records from a number of sources including a former federally licensed gun dealer. At the conclusion of the hearing, the court found a factual basis for the charges and for Woodruff's guilty pleas, and it accepted those pleas. (The court later dismissed count XIV of the indictment as it related to Woodruff.)

The Presentencing Report contained additional information linking drugs and weapons, through Woodruff's co-conspirators. For example, Benny Lee, a drug dealer and occasional enforcer for the group, had witnessed two other co-conspirators dividing up a kilogram of cocaine with firearms present. Bams and another co-conspirator had supplied Percy Lee, another member of the conspiracy, with cocaine while Percy was armed with a gun. Finally, Bams fired shots into the residence of a rival drug enterprise that sold crack cocaine. At Woodruff's sentencing hearing on March 26, 1993, the court further explored the facts behind Woodruff's offenses. It questioned Woodruff about the guns found in his home, particularly the Glock .40. Woodruff responded that Bams had acquired the Glock "from a white man who lives on the south side [in exchange] for drugs."

At the conclusion of the sentencing hearing, the court found that Woodruff's unadjusted sentencing level under the U.S. Sentencing Guidelines was 23, based on the drug count. With his criminal history category of I, this would have produced a sentence between 46 and 57 months for that count, in addition to the 60–month mandatory consecutive sentence for the gun count. On the government's motion under § 5K1.1 of the Guidelines, the court granted Woodruff a 6–level downward departure for his extensive cooperation against his coconspirators, which lowered the offense level for the drug count to 17. After further reducing Woodruff's sentence by three levels to take into consideration incarceration on related state charges, Woodruff ended up at level 14 for the drug offense. (The government had earlier proposed a different methodology, under which it suggested that Woodruff's base level could be set at 30, since the initial range for the drug offense at level 23 (46–57 months) and the mandatory 60 month consecutive sentence for the gun offense, yielded a total "base" incarceration time (106–117 months) that falls within level 30. It reasoned that under this methodology the court need grant Woodruff only a 4–level reduction under § 5K1.1, since a 4-level reduction from level 30 would lead to an approximately equal reduction in actual time as a 6–level reduction from level 23 plus 60 months. This proposal misinterprets the meaning of a consecutive sentence, and the district court correctly rejected it. See U.S. Sentencing

Guidelines Manual § 5G1.2(a) (1997).) The court imposed a sentence of 16 months for the drug offense and the mandatory consecutive 60–month term for the firearm offense, resulting in a total sentence of 76 months.

Woodruff began serving his federal sentence on May 26, 1993. In February 1996, he filed his petition under 28 U.S.C. § 2255 to withdraw his guilty plea to the § 924(c) violation and to set aside the 60–month sentence. He argued that there was no evidence that he personally used or carried a gun under the *Bailey* standard and that he should not be liable for his co-conspirators' actions under the doctrine announced in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The district court denied the petition, and Woodruff presses the same arguments here.

■ The government argues that the fact that Woodruff pleaded guilty to his gun offense means that he has waived the opportunity to challenge the factual basis for his conviction on collateral attack under § 2255. The question whether a guilty plea has the effect of waiver, and if so, how far the waiver reaches, is one on which the Supreme Court has recently granted certiorari. See *Bousley v. Brooks*, 97 F.3d 284 (8th Cir.1996), *cert. granted*, —— U.S. ——, 118 S.Ct. 31, 138 L.Ed.2d 1060 (1997). In this circuit, the rule has been that a defendant may use § 2255 to argue that the conduct underlying his guilty plea was not a crime under federal law, and we have applied this rule specifically to cases involving § 924(c) as interpreted in *Bailey*. See, e.g., *Stanback v. United States*, 113 F.3d 651 (7th Cir.1997); *Lee v. United States*, 113 F.3d 73 (7th Cir.1997); *United States v. Abdul*, 75 F.3d 327 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 2569, 135 L.Ed.2d 1085 (1996). Although these earlier decisions have not spelled out the full reasoning behind this conclusion, as a panel of this court noted in *Young v. United States*, 124 F.3d 794, 797–98 (7th Cir.1997), they have indicated briefly why those panels believed that *Bailey*, in a manner of speaking, operates retroactively. See *Stanback*, 113 F.3d at 654 n. 2.

■ Because the Supreme Court will be addressing this subject soon, we see no need to change the rule this court has followed.

In brief, however, it can be explained as follows. It is well established that § 2255 is not available to advance arguments that could have been presented in a direct appeal from a conviction. See, e.g., *Reed v. Farley*, 512 U.S. 339, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994); *Young*, 124 F.3d at 795–96; *Broadway v. United States*, 104 F.3d 901, 903 (7th Cir.1997); *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir.1988). There is also a well-recognized exception to that rule for errors so fundamental that a "complete miscarriage of justice" may have occurred. *Reed*, 512 U.S. at 354, 114 S.Ct. at 2300, quoting *Stone v. Powell*, 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir.1997). In *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the Supreme Court held that if a legal development after a conviction potentially shows that "the conviction and punishment are for an act that the law does not make criminal," *id.* at 346, 94 S.Ct. at 2305, then the miscarriage of justice exception is triggered and the § 2255 petitioner may have his claim heard on the merits.

■ As the *Young* panel noted, there is a different line of cases from the Supreme Court that throw some doubt on the question whether a person who has been convicted after a guilty plea may invoke the *Davis* rule. In *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), the Court held that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Id.* at 574, 109 S.Ct. at 765 (internal quotations omitted). The Court observed, however, just prior to summarizing its holding in that fashion, that a plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Id.* at 570, 109 S.Ct. at 762 (internal quotations omitted). *Broce* therefore allows a § 2255 petitioner to challenge the voluntariness and intelligence of a plea of guilty, but it specifically ruled out challenges on grounds such as double jeopardy, sentencing consequences, admissibility of a confession, or the composition of the grand

jury-even if the law may have changed after the plea.

*Broce* did not address the question whether the *Davis* "miscarriage of justice" concept applies to guilty plea cases, and if it does, whether the retroactivity rules set forth in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), apply to foreclose claims based on new Supreme Court decisions in which the Court definitively declares that certain conduct does not fall within a federal criminal statute at all. *Teague* itself addressed only the question of the retroactivity of "new constitutional rule[s] of criminal procedure," 489 U.S. at 299, 109 S.Ct. at 1069, which is quite different from an interpretation of a statute whose language has remained unchanged. The interaction between *Teague* and *Davis* is an issue of general importance for all cases; when one asks further whether guilty plea cases must be handled differently, after *Broce*, the need for some definitive resolution becomes even more clear.

In the case of § 924(c), *Bailey* fundamentally changed the reach of the statute in circuits like ours that had interpreted the term "use" of a firearm expansively. Although one might argue that every criminal accused of a § 924(c) "use" violation should have objected to this circuit's well-established definition, we think such a claim is inconsistent with the Supreme Court's treatment of a similar argument in *Johnson v. United States*, —— U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). In *Johnson*, the Court reviewed a conviction under 18 U.S.C. § 1623 (perjury before a grand jury), in which the trial court decided the issue of materiality rather than submitting it to the jury—as later required by *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The government argued that the petitioner should have objected to the court's deciding the issue of materiality. The petitioner replied that "such a rule would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent." —— U.S. at ——, 117 S.Ct. at 1549. The Court explicitly agreed with the petitioner, and went on with its analysis of the plain error standard of Fed.R.Crim.P. 52(b). Although the context is different here, we think the same treatment of the need to challenge well-settled law is appropriate. Guilty pleas would become almost impossible if defendants had to anticipate fundamental changes in the very nature of the crimes they are charged with, and the appellate courts do not need to be deluged with (usually) frivolous appeals, whose only purpose is to reopen well-settled law, in conditional guilty plea cases.

This court has, as noted above, already concluded that *Bailey* must be applied both to cases on direct appeal and to cases on collateral review. *See Stanback*, 113 F.3d 651; *Lee*, 113 F.3d 73; *Abdul*, 75 F.3d 327. When the Supreme Court is announcing what an existing statute has meant all along, the implications for retroactivity analysis are quite different from the case in which it is announcing for the first time another implication of the provisions of the Constitution that bear on criminal procedure. Suppose a person is "convicted" in federal court—whether by guilty plea or full trial—of purchasing a Russian mink coat, and that the person remains in custody under that conviction. If no law, at any time, ever prohibited the purchase of this type of coat, then the conviction and custody were void from the start. If, on the other hand, the person bought a coat made of cheetah fur, in violation of the laws governing purchase and possession of pelts from endangered species, a later complaint about the admissibility of a confession, the composition of the grand jury, or other procedural matters does not necessary impugn the entire proceeding. Different retroactivity rules may therefore be appropriate.

■■■ The implication of this court's earlier decisions is that *Davis* and *Broce* are in fact reconcilable. If a person purports to plead guilty to something that the law does not make criminal, as *Davis* put it, that individual has not pleaded with the understanding of the law that *Broce* noted was essential to a valid guilty plea. Our circuit's cases have rested on the understanding that, to the extent the petitioner both makes and can support such a claim, he is entitled to raise it in a § 2255 petition. Our experience

since *Bailey* was decided also shows how small an eye of the needle this is for § 2255 petitioners. If the plea of guilty necessarily covers the act of "carrying" a firearm in relation to a drug offense, then the petitioner will be unsuccessful. *E.g. United States v. Damico*, 99 F.3d 1431, 1434 (7th Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 1086, 137 L.Ed.2d 220 (1997); *United States v. Booker*, 73 F.3d 706, 709 (7th Cir.1996); *United States v. Baker*, 78 F.3d 1241, 1247 (7th Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 1720, 137 L.Ed.2d 842 (1997). If the plea of guilty relates to "use" as the Supreme Court defined it in *Bailey*, then again the petitioner will fail. *E.g. United States v. Booker*, 73 F.3d 706, 709 (1996). Only in the very narrow class of cases where someone has actually pleaded guilty to conduct not made unlawful by the statute is relief even possible. And in those cases, as we have now pointed out on numerous occasions, the § 2255 petition reopens the entire sentencing package. *See, e.g., Woodhouse v. United States*, 109 F.3d 347 (7th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 143, — L.Ed.2d — (1997); *United States v. Smith*, 103 F.3d 531 (7th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 1861, 137 L.Ed.2d 1061 (1997); *United States v. Binford*, 108 F.3d 723 (7th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 2530, 138 L.Ed.2d 1029 (1997). We freely acknowledge that differences of opinion exist on the correct way to reconcile *Davis* and *Broce*, and we assume this is why the Supreme Court will be addressing the question soon. But for now, we adhere to this court's approach to the question and we reject the government's argument that Woodruff's guilty plea operates as a waiver of his right to present his case to us.

 Unfortunately for Woodruff, the end result will not vary for him despite our finding of no waiver. It is beyond argument in this circuit that the rule of co-conspirator liability announced in *Pinkerton* applies to § 924(c) convictions, and that *Bailey* did nothing to alter this rule. See, *e.g., United States v. Damico*, 99 F.3d 1431, 1434 (7th Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 1086, 137 L.Ed.2d 220 (1997); *United States v. Feinberg*, 89 F.3d 333, 340 n. 5 (7th Cir.1996) (citing *United States v. Thomas*, 86

F.3d 647, 651 n. 6 (7th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 392, 136 L.Ed.2d 307 (1996)), *cert. denied*, — U.S. —, 117 S.Ct. 997, 136 L.Ed.2d 876 (1997). Woodruff himself testified at the sentencing hearing that Bams bartered drugs for the Glock .40. Barter of a gun in exchange for drugs is expressly mentioned in the *Bailey* opinion as an example of "active employment" that qualifies as "use." *See* at —, 116 S.Ct. at 505, citing *Smith v. United States*, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993); *Broadway*, 104 F.3d at 904. As noted above, the Presentence Report also contained a number of examples of active use of guns by Woodruff's co-conspirators, and the district court had ample evidence before it that showed the coconspirators' use of the guns was in furtherance of the conspiracy and reasonably foreseeable to Woodruff. See *United States v. Williams*, 81 F.3d 1434 (7th Cir.1996). Woodruff himself said that Bams, with whom he lived, had a "personal" .38 Special and that he knew Bams carried it around with him. Woodruff, in any event, never challenged foreseeability before the district court and has thus waived the point.

Before concluding, we note that Woodruff's attorney made our task more difficult by failing to comply with Circuit Rule 30. He did not include in the appendix to his brief anything but the docket sheet and the brief decision and order of the district court dismissing the action. The order itself says that it is "based upon the findings of fact and conclusions of law made upon the record of the evidentiary hearing held on August 28, 1996." Circuit Rule 30(a) plainly requires an appellant to submit, bound with the main brief, the "findings of fact and conclusions of law, or oral statement of reasons delivered by the trial court." We will not impose any sanction on the attorney at this time, but this type of oversight cannot continue.

We AFFIRM the judgment of the district court.

MANION, Circuit Judge, concurring.

I concur in the judgment of the court. I write separately because I find it unnecessary to attempt to resolve inter and intra-circuit tensions, especially when the Supreme

Court has granted certiorari to decide the issue. In granting certiorari in *Bousley v. Brooks,* 97 F.3d 284 (8th Cir.1996), the Court will determine whether a defendant's guilty plea means he has waived any right to file a collateral appeal, even one that cites post-conviction legal developments such as *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). We therefore will know shortly whether parts of this court's decisions in *Stanback v. United States,* 113 F.3d 651 (7th Cir.1997), and *Lee v. United States,* 113 F.3d 73 (7th Cir.1997), were at odds with *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), and, more recently, whether *Johnson v. United States,* —— U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), further calls them into question. *See Young v. United States,* 124 F.3d 794, 798 (7th Cir.1997) ("We need not decide whether to overrule *Stanback* and *Lee* or to place the subject before the court *en banc*; it is enough for now to flag the apparent discrepancy between their approach and that of the Supreme Court.").

At this point it is necessary only to say that Woodruff's liability is based upon *Pinkerton (Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)), which is broader than liability under *Bailey* because it focuses on the crimes of conspirators. In his brief to this court, Woodruff claims that *Bailey* overruled *Pinkerton,* something the Supreme Court has never said nor have we suggested. In fact, post-*Bailey,* *Pinkerton* is alive and well with respect to § 924(c) charges, a fact that *Lee* itself recognized. 113 F.3d at 76 ("we look not only at [defendant's] own conduct but also at that of his coconspirators"). In short, in cases of clear-cut *Pinkerton* liability, we need not reflect upon the waiver issue and sort out whether a defendant's guilty plea means he has surrendered his right later to contest his conviction (something strongly suggested by *Broce).* In *Bousley* the Supreme Court will determine whether such a guilty plea is in fact a waiver. The outcome will simply determine whether a *Pinkerton* defendant like Woodruff loses for one reason or two.